IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNIVERSAL SERVICES OF AMERICA, LP and UNIVERSAL PROTECTION SERVICE, LP D/B/A ALLIED UNIVERSAL SECURITY SERVICES,<br><br>Plaintiffs,<br><br>v.<br><br>Sean Miner,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTIONS FOR PRELIMINARY RELIEF AND EXPEDITED DISCOVERY<br><br>Case No. 2:25-cv-00795-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

Plaintiffs Universal Services of America, LP, and Universal Protection Service, LP d/b/a Allied Universal Security Services ("Allied Universal") bring a motion for a temporary restraining order and a preliminary injunction to be entered against defendant Sean Miner. ECF No. 14 ("Pls.' Mot. for Preliminary Relief"). They also seek expedited discovery. ECF No. 15 ("Pls.' Mot. for Discovery"). The court held a hearing, where both parties were given the opportunity to call and cross-examine witnesses and present other evidence. ECF No. 28. After careful consideration, both motions are DENIED for the reasons discussed below.

**FINDINGS OF FACTS**[1]

Allied Universal hired Miner as a client manager in August 2023, paying him a monthly salary of $5,000. ECF No. 24-1 ("Miner Aff.") at 1. During his employment, Miner signed two

---

[1] The court makes the following findings of facts based upon the testimony and documentary materials received into evidence.

agreements purporting to create various post-employment obligations. The first agreement, titled "Employment and Non-Compete Agreement," included (1) a non-compete provision, (2) a non-interference provision, (3) a non-raiding provision, and (4) restrictions on the use of confidential information. ECF No. 1-2 ("Compl. Attach.") at 2–5.[2] It also included a notification provision, purporting to require Miner "to promptly notify [Allied Universal] in writing of the name and address" of any future employer during the twelve-months following his employment with Allied Universal. *Id.* at 6. A second agreement purported to establish similar obligations, some of which were extended from twelve months to twenty-four months. *Id.* at 10–17. The training Allied Universal provided to Miner consisted of two days of shadowing and recorded online programing. Miner Aff. at 2; Miner's Hearing Testimony ("Miner Test.").[3] In April 2025, Miner's employment with Allied Universal ended, with Miner plausibly claiming that he was constructively terminated. Miner Aff. at 2; Miner Test.

On April 16, 2025, Allied Universal sent Miner a letter, making assertions about his post-employment obligations. Compl. Attach. at 19–28. The letter raised a concern that Miner had "retained possession of certain documents containing [Allied Universal's] confidential information and trade secrets." *Id.* at 19. These documents had both been drafted by Miner, and he had emailed them to his personal email to edit them while he was still employed by Allied Universal. Miner Test. But Miner had used those documents only to assist colleagues at Allied

---

[2] Because the Complaint Attachment is not consistently paginated, the court uses the order in which the pages appear on the docket.

[3] As of writing, an official version of the hearing transcript is unavailable. The court thus will indicate on which witness's testimony it is relying without providing a specific pin cite to the transcript.

Universal; he had never intended to use them for a future employer. *Id.* Miner eventually signed an affidavit drafted by Allied Universal's counsel, though only after they refused to make changes he had requested. *Id.*; Compl. Attach. at 30–32; ECF No. 27-4. The affidavit acknowledged the obligations asserted by Allied Universal and Miner's intent to comply with them. Compl. Attach. at 30–32. Miner had, in fact, deleted the emails he had sent to his personal email and no longer had access to any files, documents, or other confidential information belonging to Allied Universal. *Id.* at 30; Miner Test.

For the next several months, Miner unsuccessfully sought employment outside the security industry. Miner Aff. at 2; Miner Test. Due to financial difficulties, he eventually decided to interview for a position with Inter-Con Securities. Miner Aff. at 2; Miner Test. In August 2025, he accepted the position with Inter-Con. Miner Aff. at 2; Miner Test. Miner never notified Allied Universal about this new position. Miner Test. But this was simply an oversight on his part, having forgotten about the notification requirement. *Id.* Miner's role at Inter-Con is limited to work with Inter-Con's pre-existing client Amazon. Miner Aff. at 2; Miner Test. Amazon is Inter-Con's only client in Utah, and there is no indication that Inter-Con intends to work with any other clients in Utah. Miner Test; Nicholas Blanchette's Hearing Testimony ("Blanchette Test.")[4] Miner has not "solicited, recruited, hired, or contacted" any Allied Universal customers or employees and has no intention to do so. Miner Aff. at 3; Miner Test. He has not disclosed any of Allied Universal's confidential information to Inter-Con and has no intention to do so. Miner Aff. at 4; Miner Test. Plaintiffs allege no facts and present no evidence suggesting otherwise.[5]

---

[4] This refers to the live hearing testimony of Miner's supervisor at Allied Universal.

[5] Plaintiffs' counsel represented at the hearing that one of Allied Universal's security guards had told her manager that she had spoken with Miner "regarding the possibility of going to work for

On September 11, 2025, Plaintiffs filed the present action, asserting breach of contract claims against Miner based on the two agreements. ECF No. 1 ("Compl.") at 18–21. Plaintiffs make three factual allegations: (1) Miner's employment with Inter-Con violated the non-compete provisions; (2) Miner violated the non-solicitation provisions by attempting to solicit "Allied Universal employee(s)"; and (3) Miner violated the notification requirement by failing to inform Allied Universal of his employment with Inter-Con. *Id.* at 18–20. Plaintiffs make two additional allegations "upon information and belief": (1) Miner retained possession of Allied Universal's confidential information; and (2) Miner solicited customers to leave Allied Universal. *Id.* Plaintiffs asked the court to issue a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Miner from violating his contractual obligations. *Id.* at 21.

On September 24, 2025, Plaintiffs brought a motion for preliminary injunctive relief, requesting an order temporarily restraining Miner from

> (i) soliciting Allied Universal's employees to leave their employment with Allied Universal; (ii) soliciting any customers, with whom [Miner] had material contact during the last twelve months of his employment with Allied Universal, to cease doing business with Allied Universal; (iii) selling or providing security-related services to any Restricted Customers; (iv) using, divulging, or disclosing any of Allied Universal's confidential information in his possession, custody, or control; and (v) committing any other violations of his contractual obligations to Allied Universal.

Pls.' Mot. for Preliminary Relief at 1. It similarly asked for a preliminary injunction, restraining Miner from the same conduct, until the court could issue a permanent injunction. *Id.* The same day Plaintiffs filed a separate motion seeking expedited discovery for a preliminary injunction hearing.

---

Inter-Con." But the security guard was unwilling to make an official statement, and the court puts very little stock in this vague hearsay. Indeed, it is entirely possible that it was the security guard who had initiated contact with Miner about working for Inter-Con.

Pls.' Mot. for Discovery. The court scheduled a hearing to address both motions. ECF No. 21. The day before the hearing, Miner's counsel filed briefing opposing Plaintiffs' request for preliminary relief. ECF No. 24 ("Def.'s Mem. in Opp'n.").

At the hearing, the parties presented evidence consisting of (1) documents connected to Miner's employment at Allied Universal and his termination, (2) live testimony from Miner's supervisor at Allied Universal, Nicholas Blanchette, and (3) live testimony from Miner. ECF No. 27 ("Pls.' Exs."); ECF No. 29 ("Witness and Ex. List"). Plaintiffs, at the conclusion of the hearing, orally amended their motion for preliminary relief to remove any request to enforce the non-compete provisions. The court is therefore left to consider Plaintiffs' remaining requests for injunctive relief and for expedited discovery.

## LEGAL STANDARD

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah Oct. 9, 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

To obtain preliminary relief, a party must show that (1) it "is substantially likely to succeed on the merits"; (2) it "will suffer irreparable injury if the [preliminary relief] is denied"; (3) its "threatened injury outweighs the injury the opposing party will suffer under the [relief]"; and (4) "the [relief] would not be adverse to the public interest." *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). The first two factors are "the most critical." *Szymakowski v. Utah High Sch. Activities Ass'n, Inc.*, 756 F. Supp. 3d 1238, 1246–47 (D. Utah 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). To grant preliminary relief, "the movant's right to relief must be clear and

5

unequivocal." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Wilderness Workshop v. BLM*, 531 F.3d 1220, 1224 (10th Cir. 2008)).[6]

## DISCUSSION

The court begins with Plaintiffs' general request for catch-all injunctive relief, enjoining Miner from violating his contractual obligations to Allied Universal outside of the non-compete provision. This relief is prohibited by the Federal Rules of Civil Procedure, which require an order issuing an injunction to "state its terms specifically" and "describe in reasonable detail . . . the acts restrained or required." Fed. R. Civ. P. 65(d). Plaintiffs' proposed catch-all injunction would threaten Miner with contempt for violating even a single clause of his broadly phrased contracts and, therefore, cannot be granted.[7] Indeed, this proposed relief is akin to the obey-the-law injunctions that courts have routinely found to be inconsistent with Rule 65(d). *See, e.g.*, *Vallario v. Vandehey*, 554 F.3d 1259, 1268–69 (10th Cir. 2009); *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam); *Keyes v. Sch. Dist. No. 1*, 895 F.2d 659, 668 (10th Cir. 1990); *Shook v. Bd. of*

---

[6] There are three categories of preliminary relief that are subject to an even more demanding standard: "(1) preliminary [relief] that alter[s] the status quo; (2) mandatory preliminary [relief]; and (3) preliminary [relief] that afford[s] the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004*), aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). Plaintiffs argue that their current request does not fall into any of these three categories. Pls.' Mot. for Preliminary Relief at 11–13. Because the court finds that Plaintiffs are not entitled to preliminary relief even under the less demanding standard, it need not decide whether the heightened standard applies.

[7] For example, many contractual requirements in the second agreement turn on what qualifies as confidential information. Compl. Attach at 10–16. The agreement defines confidential information cryptically as including "all confidential, proprietary or business information related to the Company's Business . . . that is furnished to, obtained by, or created by Participant during Participant's employment with the Company and which could be used to harm or compete against the Company." *Id.* at 11. This broad definition makes it impossible to state Miner's obligations under the agreement with specificity.

6

*Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597, 606 (10th Cir. 2008). The requirements of "Rule 65(d) are no mere technical[ities]" but instead are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt*, 414 U.S. at 476. Accordingly, equity does not support the obey-your-contract injunction sought by Plaintiffs.

Next, the court turns to Plaintiffs' requests for more specific injunctive relief—related to soliciting clients, soliciting and servicing customers, and misusing confidential information. There is a colorable argument that even these requests run afoul of Rule 65(d)'s specificity requirements. *See* Def.'s Mem. in Opp'n at 18–22. But the court can avoid resolving these issues concerning Rule 65(d) because Plaintiffs do not come remotely close to making the clear and unequivocal showing required for extraordinary equitable relief.

The inadequacy of Plaintiffs' showing can perhaps be most clearly seen with respect to irreparable harm. Here, Plaintiffs are required to show that that "irreparable injury is *likely* in the absence of [preliminary relief]." *Winter*, 555 U.S. at 22 (emphasis in original). When they point to the possibility of future harm, it must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021) (quoting *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005)). Although the harm need not be certain, there must be "a significant risk." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). Plaintiffs, in contrast, point to nothing besides "[p]urely speculative harm." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Miner has affirmed under oath that, since leaving Allied Universal, he has never solicited or serviced its customers, solicited its employees, or misused its confidential information. Miner Aff. at 3–4. He further affirms that he has no intent to commit these prohibited activities. *Id.* The

court finds these representations credible, and Plaintiffs have no concrete evidence suggesting otherwise.[8]

Plaintiffs' case for irreparable harm instead relies exclusively on circumstantial evidence. They point primarily to Miner's new position with Inter-Con, which supposedly "create[s] a substantial risk that [Miner] will leverage the goodwill and confidential information obtained during his employment" to harm Allied Universal. Pls.' Mot. for Preliminary Relief at 16–17. Plaintiffs also point to other circumstantial facts, such as the fact that Miner had failed to notify Allied Universal about his new position and that he now holds the position of district manager. Miner Test; Blanchette Test.

But none of this circumstantial evidence even suggests that it is likely that Miner has or will harm Allied Universal. There is no evidence suggesting that Miner's position in any way involves competition with Allied Universal for clients or employees. Nor is there any evidence that Inter-Con has any interest in competing with Allied Universal in Utah.[9] Miner's own employment history with Allied Universal shows that it is possible to work in the security industry without having any need or facing any pressure to leverage relationships or information from a previous employer. Miner Test; Blanchette Test. In fact, Miner's current employment situation undermines any suggestion that he is likely to solicit any of Allied Universal's clients inasmuch as Inter-Con hired Miner for the exclusive purpose of managing the operations of Inter-Con's pre-

---

[8] It appears that Plaintiffs' counsel attempted to establish that Miner's testimony was inconsistent. But the court finds that the supposed inconsistencies, related to the extent of Miner's training and whether he was constructively discharged, are either illusory or minor.

[9] Plaintiffs urge the court to "take it as axiomatic that competitors intend to take each others' business." But this bald assertion ignores the complex reality of modern businesses, which all too often occupy their own distinctive niches.

existing client Amazon. Likewise, Miner's failure to notify Allied Universal about his new employment was an understandable oversight. And Miner's position as district manager just reflects the fact that Miner is overseeing multiple sites for Amazon, which is Inter-Con's one client in Utah. *Id.* at 76. In short, the evidence establishes that Miner has never harmed Allied Universal and neither he nor his new employer have any plans to do so. Plaintiffs thus fail in showing the likelihood of harm needed for extraordinary equitable relief. They do no more than identify the mere possibility of harm, which the Supreme Court has repeatedly noted is insufficient. *See Winter*, 555 U.S. at 22. Even if Plaintiffs could somehow establish a likelihood of harm, they would still not meet their full burden of showing a *substantial* risk of *imminent* and *irreparable* harm absent a court order.

With respect to likelihood of success on the merits, Plaintiffs again fail. Plaintiffs bring breach of contract claims that require them to prove (1) the existence of a valid contract, (2) performance by the party seeking recovery, (3) breach of contract, and (4) damages. *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014). To establish breach, Plaintiffs' primarily point to the fact that Miner accepted employment with Inter-Con in violation of the non-compete.[10] Pls.' Mot. for Preliminary Relief at 14–15. But Defendants raise a plausible argument that the non-compete is unenforceable.[11] *See* Def.'s Mem. in Opp'n at 11–13. And even the

---

[10] Because Plaintiffs are no longer seeking to enjoin Miner from violating the non-compete, one may question whether Plaintiffs can still use a violation of the non-compete to establish likelihood of success on the merits. The court is aware of no authority that directly answers the question and the parties neither briefed nor argued the issue. The court, though, can avoid ruling on this issue because it finds that Plaintiffs have failed to establish a likelihood of success even if they are permitted to rely on the non-compete.

[11] The Utah Supreme Court has held that "[c]ovenants not to compete which are primarily designed to limit competition or restrain the right to engage in a common calling are not enforceable." *Robbins v. Finlay*, 645 P.2d 623, 627 (Utah 1982). This means that non-competes designed to

notification provision, which Miner violated, may be similarly unenforceable.[12] Otherwise, Plaintiffs simply speculate that Miner will violate contractual obligations in the future with no concrete evidence suggesting that violations are likely. Pls.' Mot. for Preliminary Relief at 14–15. Even if Plaintiffs could likely establish breach, their case still would likely falter with respect to damages. Based on the record before the court, Miner's employment with Inter-Con only involves servicing Inter-Con's pre-existing client Amazon. It is unclear how this work does anything to

---

prevent employees from leveraging their "[g]eneral knowledge or expertise acquired through employment in a common calling" with a future employer are unenforceable. *Id.* at 628. There is a strong argument that the non-compete here falls under this description and is primarily designed to prevent Miner from using his general knowledge as a manager in the security industry with Allied Universal's competitors. As Defendants argue, the specific factors listed in *Robbins* appear to support this conclusion insofar as Miner did not receive any "extraordinary investment in . . . [his] training or education" and had relatively limited duties and access to confidential information. *Id.* at 627; Def.'s Mem. in Opp'n at 12–13.

    More broadly, covenants not to compete are only enforceable when they are "carefully drawn to protect only the legitimate interests of the employer." *Id.* at 627. *Id. See also Allen v. Rose Park Pharmacy*, 237 P.2d 823, 826 (Utah 1951) (emphasizing that restrictive covenants, including non-competes, generally must be "necessary for the protection of the business for the benefit of which the covenant was made and no greater restraint is imposed than is reasonably necessary to secure such protection"). The facts of this case suggest that this non-compete is neither carefully drawn nor reasonably necessary to protect Allied Universal's legitimate interests. If Inter-Con is simply servicing a pre-existing client and has no intent to compete with Allied Universal in Utah for its employees and clients, there appears to be no legitimate reason for Allied Universal to prevent Miner from working with Inter-Con—or to even require him to give Allied Universal notice of his employment. Regardless of Inter-Con's actual plans, the mere fact that Miner's employment would be prohibited in these circumstances speaks to the non-compete's overbreadth. It appears that Allied Universal would be able to adequately protect its legitimate interests through other contractual provisions, such as the bans on solicitation and the misuse of confidential information, that would do far less to restrain its former employees from making a living.

[12] Insofar as the notification requirement is subject to *Allen*'s requirement of providing "no greater restraint . . . than is reasonably necessary" to protect legitimate business interests, it too may be unenforceable. 237 P.2d at 826. This requirement may in practice function as an unreasonable de facto non-compete that allows Allied Universal to use the threat of litigation to chill prospective competitors from hiring its former employees.

10

harm Plaintiffs.[13] Thus, for two independent reasons, Plaintiffs have not established that they will likely succeed on the merits.

Next, the balance of hardship favors Miner. While Plaintiffs argue that their proposed injunction would cause Miner no hardship because it only enjoins him from activities he has no interest in doing, this ignores the extensive collateral effects of a court-issued injunction. At worse, an injunction could cause Miner to lose perfectly legitimate employment because of the threat of litigation; at best, an injunction will add to Miner's likely already extensive legal fees. This threatened harm to Miner is serious. By contrast, Plaintiffs stand to face little hardship, if any, if the court does not issue an injunction. As already discussed, Plaintiffs are trying to enjoin Miner from activities in which he has never engaged and likely will never engage regardless of any court order. Accordingly, Plaintiffs likely stand to experience zero hardship, and, at most, their hardship is highly speculative and uncertain.

Finally, the public interest favors denying Plaintiffs' request. As Plaintiffs correctly note, the public has interest in "the enforcement of lawful contractual obligations." *Neways Inc. v. Mower,* 543 F. Supp. 2d 1277, 1290 (D. Utah 2008); Pls.' Mot. for Preliminary Relief at 18–19. But this public interest may not translate to this case insofar as Plaintiffs are seeking to enforce potentially unlawful contracts. And as Defendants stress, the public also has an interest in favor of economic competition and against the unreasonable restraint of trade. *See* Def.'s Mem. in Opp'n. at 17–18; *MedSpring Grp., Inc. v. Feng*, 368 F. Supp. 2d 1270, 1280 (D. Utah 2005) (emphasizing

---

[13] Even if Miner's work for Inter-Con harms Allied Universal by adding value to a competitor in a competitive national market, this downstream economic harm is much too attenuated and speculative to support a finding of damages. *See Mahmood v. Ross*, 990 P.2d 933, 938 (Utah 1999) (describing the requirements for a party to recover consequential damages).

the "public's interest in encouraging competition and supporting an individual's right to exploit his own skill and knowledge"). Indeed, the Utah Constitution declares that "[i]t is the policy of the state of Utah that a free market system shall govern trade and commerce in [Utah] to promote the dispersion of economic and political power and the general welfare of all the people" and prohibits "restraint[s] of trade or commerce." Utah Const. art. XII, §20. *See also Golding v. Schubach Optical Co.*, 70 P.2d 871, 875 (Utah 1937) (affirming that Utah citizens have an inalienable "right . . to sell [their] time and [their] talents"). Apart from these lofty principles, the public interest clearly speaks against spending considerable time and resources—ultimately at the expense of taxpayer dollars—to enforce and oversee a virtually pointless injunction.

Plaintiffs thus have not come close to making the clear and equivocal showing required for extraordinary equitable relief. Following a hearing in which Plaintiffs were given the opportunity to cross-examine Miner and this ruling denying their request for preliminary injunctive relief, Plaintiffs' motion for expedited discovery is now moot.

## CONCLUSION AND ORDER

For the reasons above, the court DENIES Plaintiffs' motion for preliminary relief. It DENIES Plaintiffs' motion for expedited discovery as moot.

DATED October 29, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge